# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:16-cv-00149-MR
# (CRIMINAL CASE NO. 1:12-cr-00085-MR-DLH-1)

| | |
|---|---|
| DONZELL ALI MCKINNEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255 [CV Doc. 1][1] and the Government's Motion to Dismiss Petitioner's Motion to Vacate [CV Doc. 9]. The Petitioner is represented by Ann Hester of the Federal Defenders of Western North Carolina.

## I. BACKGROUND

In September 2011, the Petitioner Donzell Ali McKinney ("Petitioner") and his co-defendant, Clinton Hugo Wilson ("Wilson"), robbed a barbecue

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:16-cv-00149-MR, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:12-cr-00085-MR-DLH.

restaurant in Asheville, North Carolina. [CR Doc. 13: PSR at 5-6]. The Petitioner and Wilson approached two women outside of the restaurant. [Id. at 5]. The Petitioner, armed with a pistol, hit one of the women in the head, ordered both to the ground, and then beat on the restaurant's door. When a witness drove up, the Petitioner ordered her out of her car, "put a gun to her head," and "ordered her inside the restaurant." [Id.].

When the restaurant's manager went to the door to investigate the noise, the Petitioner "pointed a black 9 mm handgun at" the manager "and yelled, 'Open the fucking door!'" [Id.]. When the manager did not move fast enough, the Petitioner fired the gun in his direction. [Id.]. The robbers ordered the manager to open the safe and retrieve the cash inside, which amounted to $451. [Id.].

The Petitioner fled the scene in a car driven by a third co-defendant. The police pursued the car, and the Petitioner jumped from the car during the pursuit. Following an extensive manhunt, the police found the Petitioner hiding in the bushes. [Id.]. They also found a 9mm pistol. [Id.]. The Petitioner admitted to the robbery. [Id. at 6].

A grand jury in the Western District of North Carolina returned a Bill of Indictment against the Petitioner and his two co-defendants. The Bill of Indictment charged the Petitioner with three counts: one count of Hobbs Act

robbery, in violation of 18 U.S.C. § 1951(a) (Count One); one count of conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); and one count of possession of a firearm that was discharged in furtherance of a "crime of violence," that being the substantive Hobbs Act robbery charged in Count One, all in violation of 18 U.S.C. § 924(c)(1)(A)(iii). [Criminal Case No. 1:12-cr-00012-MR-WCM, Doc. 1: Indictment].

The Petitioner entered into a written Plea Agreement with the Government, pursuant to which the Petitioner agreed to plead guilty to a separate Bill of Information. [CR Doc. 1: Bill of Information; CR Doc. 2: Plea Agreement]. The Bill of Information to which the Petitioner agreed to plead guilty contained two counts: one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and one count of possession of a firearm that was discharged in furtherance of a "crime of violence," in violation of 18 U.S.C. § 924(c)(1)(A)(iii). [CR Doc. 1: Bill of Information]. Unlike the § 924(c) count set forth in Count Three of the Bill of Indictment, Count Two of the Bill of Information alleged the predicate "crime of violence" to be the Hobbs Act conspiracy charged in Count One of the Bill of Information. [Id.]. The Petitioner faced a maximum term of twenty 20 years' imprisonment for Count One, see 18 U.S.C. § 1951(a), and a mandatory

consecutive sentence of not less than 10 years to life for Count Two, see 18 U.S.C. § 924(c)(1)(A)(iii).

In exchange for the Petitioner's guilty plea to these two counts, the United States agreed to move at the appropriate time to dismiss the charges contained in the Bill of Indictment filed in Criminal Case No. 1:12-cr-00012-MR-WCM. [CR Doc. 2: Plea Agreement at 1]. In the Plea Agreement, the Petitioner agreed to waive his right to appeal or collaterally attack his conviction on any ground other than prosecutorial misconduct or ineffective assistance of counsel. [Id. at 4].

The Magistrate Judge accepted the Petitioner's plea after conducting a thorough colloquy under Rule 11 of the Federal Rules of Criminal Procedure. [CR Doc. 5: Acceptance of Guilty Plea]. At the Rule 11 hearing, the Magistrate Judge confirmed that the Petitioner was aware of and agreed to the postconviction waiver set forth in the Plea Agreement [Id. at 9], and he found that the Petitioner's plea was "knowingly and voluntarily made" [Id. at 10].

A presentence report ("PSR") was prepared in advance of the Petitioner's sentencing. The PSR detailed the Petitioner's use and discharge of a firearm in furtherance of the September 2011 robbery. [CR Doc. 13: PSR at 5-6]. Although the Petitioner objected to the finding that he pointed

the gun at the witness who drove up or fired the gun at the restaurant's manager, he conceded that "he fired the weapon toward the ceiling." [Id. at 20]. The Petitioner did not object to the other facts described in the PSR, nor did he object to the conclusion that he "admits participation and accepts responsibility for his involvement in the instant offense." [Id. at 6].

In the PSR, the probation officer noted the mandatory ten years to life consecutive sentence for Petitioner's § 924(c) conviction. [CR Doc. 13 at ¶ 73]. For Count One, the probation officer calculated a Total Offense Level (TOL) of 25, which included a two-level enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2. The probation officer also calculated a Criminal History Category of IV. This yielded a Guidelines Range calling for a term of imprisonment for Count One between 84 and 105 months, plus a mandatory consecutive sentence of not less than ten years for Count Two. [Id. at ¶¶ 36, 43, 74].

The Petitioner's sentencing hearing was held on March 30, 2013. At the hearing, the Court found that the Petitioner was not subject to the recommended two-level enhancement, the removal of which yielded a TOL of 23 and a Guidelines Range of 70 to 87 months' imprisonment for Count One. [CR Doc. 23: Statement of Reasons]. The Court sentenced the Petitioner to a term of imprisonment of 70 months on Count One, and a

consecutive term of 120 months on Count Two, for a total term of 190 months' imprisonment. [CR Doc. 22 at 2: Judgment]. The Petitioner did not file a direct appeal from this Judgment.

On June 13, 2016, the Petitioner filed the present Motion to Vacate Sentence under 28 U.S.C. § 2255, arguing that his conviction under 18 U.S.C. § 924(c) is invalid under Johnson v. United States, 135 S. Ct. 2551 (2015). [CV Doc. 1]. Specifically, he argues that the residual clause of section 924(c)'s definition of "crime of violence" — which includes any offense that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B) — is unconstitutionally vague. He further argues that his Hobbs Act conspiracy offense does not qualify as a crime of violence under the remaining parts of that definition. [Id. at 3-5].

Upon the request of the Government, this matter was stayed pending the Fourth Circuit's decision in United States v. Ali, No. 15-4433, and United States v. Simms, No. 15-4640. [CV Docs. 5, 6]. The Fourth Circuit then ordered that Ali would be held in abeyance pending the Supreme Court's decision in United States v. Davis, No. 18-431. This Court, in turn, stayed the matter pending Davis. [CV Doc. 7]. The Supreme Court decided Davis

6

on June 24, 2019. The next day this Court lifted the stay and ordered the Government to respond to the Petitioner's motion by August 23, 2019. Petitioner subsequently filed a supplemental memorandum in support of his Section 2255 motion. [CV Doc. 11]. The Government timely filed its response [CV Doc. 12], and the Petitioner replied [CV Doc. 13].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

In Johnson, the Supreme Court struck down the Armed Career Criminal Act's (ACCA) residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague and held that enhancing a sentence under the ACCA's residual clause violates due process. Johnson, 135 S. Ct. at 2563.

The ACCA residual clause defined a "violent felony" to include any crime punishable by a term of imprisonment exceeding one year that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Accordingly, under Johnson, a defendant who was sentenced to a statutory mandatory minimum term of imprisonment based on a prior conviction that satisfies only the residual clause of the "violent felony" definition is entitled to relief from his sentence. The Supreme Court has held that Johnson applies retroactively to claims asserted on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

Here, in his Section 2255 Motion to Vacate, the Petitioner argues that his § 924(c) conviction is invalid under Johnson. [CV Doc. 1]. Section 924(c) criminalizes the use of a firearm in furtherance of a "crime of violence." Under § 924(c), an offense qualifies as a crime of violence if it either "has an element the use, attempted use, or threatened use of physical force against the person or property of another," (the "force clause") or "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3). In short, the Petitioner argues that because § 924(c)'s residual clause "is functionally indistinguishable from the

ACCA' residual clause," which was found to be unconstitutionally vague, the predicate conviction in the Petitioner's criminal proceedings, Hobbs Act conspiracy, can qualify as a § 924(c) "crime of violence" only under the force clause.  [Doc. 1 at 3-4].

Three years after the Petitioner filed his original Section 2255 motion, the Supreme Court decided <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019).  In <u>Davis</u>, the Supreme Court specifically held the residual clause of § 924(c)'s definition of "crime of violence" is "unconstitutionally vague."  139 S. Ct. at 2336.  As such, <u>Davis</u> made clear that Petitioner's conviction on Count Two is valid only if Hobbs Act conspiracy qualifies as a "crime of violence" under § 924(c)'s force clause.  The Fourth Circuit squarely addressed this issue in <u>United States v. Simms</u>, concluding that Hobbs Act conspiracy does not categorically qualify as a crime of violence under the force clause of § 924(c).  914 F.3d 229, 233-34 (4th Cir.), <u>cert. denied</u>, 140 S. Ct. 304 (2019).

The inquiry in this case, however, does not end there.  In order to assert a habeas challenge to his § 924 conviction predicated on Hobbs Act conspiracy, the Petitioner must overcome the obstacles of procedural default and waiver.  The Court addresses each of these doctrines in turn.

## A. Procedural Default

Generally, claims that could have been, but were not, raised on direct review are procedurally barred by default. As the Supreme Court has recognized, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation and internal quotation marks omitted). Thus, in order to collaterally attack a conviction or sentence based upon errors that could have been pursued on direct appeal, a petitioner must show either (1) "cause" and "actual prejudice" resulting from the errors complained of, or (2) that he is "actually innocent." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

To establish actual innocence, the Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." United States v. Courtade, 929 F.3d 186, 191 (4th Cir. 2019) (quoting Bousley, 523 U.S. at 623), as amended (July 10, 2019), cert. denied, No. 19-428, 2020 WL 129578 (U.S. Jan. 13, 2020). In the context of procedural default, the term "actual innocence" refers to "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

This burden of demonstrating actual innocence extends not only to the challenged count of conviction, but also to any "more serious charges" that

the Government decided to forego in exchange for the petitioner's guilty plea. Id. at 624 ("In cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.").

Here, in exchange for the Petitioner's guilty plea to one count of Hobbs Act conspiracy and one count of carrying and using a firearm during and in relation to a Hobbs Act conspiracy as set forth in the Bill of Information, the Government agreed to dismiss the three counts in the original Bill of Indictment, including Count Three, which charged the Petitioner with carrying and using a firearm during and in relation to a Hobbs Act robbery. The Petitioner argues that the § 924(c) charge contained in Count Three of the Bill of Indictment is, at most, "equally serious" to the § 924(c) charge to which he pled. As such, the Petitioner contends, Count Three is not a "more serious charge" within the meaning of Bousley, and therefore, his obligation to demonstrate his actual innocence does not extend to this dismissed count.

The fact that these two counts are both under § 924(c), however, does not render them equal.[2] Count Three of the Bill of Indictment was predicated

---

[2] The Court notes that the Seventh Circuit has extended Bousley to charges that were "as serious" as the count of conviction. Lewis v. Peterson, 329 F.3d 934, 937 (7th Cir. 2003). Following the logic of Lewis, the Petitioner would be required to demonstrate actual innocence for the dismissed § 924(c) count because it was at least as equally serious as the § 924(c) count of conviction. The Fourth Circuit has not specifically adopted this line of reasoning, however, and therefore, the Court will limit its analysis to

11

upon a Hobbs Act *robbery* rather than a Hobbs Act *conspiracy*. The Fourth Circuit has held that a Hobbs Act robbery is a crime of violence, see United States v. Mathis, 932 F.3d 242, 266 (4th Cir.), cert. denied, Nos., 19-6423, 19-6424, 2019 WL 6689801, 2019 WL 6689802 (2019), while a Hobbs Act conspiracy is not, see United States v. Simms, 914 F.3d 229, 233-34 (4th Cir.), cert. denied, 140 S. Ct. 304 (2019). And there are many instances in the law where a crime of violence is treated more seriously and more harshly than a crime that is not violent. The more serious nature of a "violent" charge even has implications beyond the current prosecution, as a conviction for a crime of violence can form a basis for enhanced penalties in future cases under the Armed Career Criminal Act or the Career Offender provision of the Sentencing Guidelines.

Further, the nature of the two crimes are also substantively and qualitatively different. For example, a Hobbs Act conspiracy may be committed simply by providing a getaway car for a robbery. See United States v. Strayhorn, 743 F.3d 917, 926 (4th Cir. 2014). A Hobbs Act robbery conviction, on the other hand, requires a showing of some violent action in committing the robbery. See Mathis, 932 F.3d at 266 (holding that Hobbs

---

whether the dismissed count could be considered "more serious" than the count of conviction.

12

Act robbery is a crime of violence under the force clause of § 924(c)); 18 U.S.C. § 1951(b)(1) (defining robbery under the Hobbs Act as the taking of personal property from another "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property"). For all these reasons, the Court concludes that a § 924(c) charge predicated on a Hobbs Act robbery is a "more serious" count than a § 924(c) charge predicated on a Hobbs Act conspiracy.

Because the Government dismissed a more serious count in exchange for the Petitioner's guilty plea to the charges in the Bill of Information, the Petitioner must demonstrate his factual innocence with respect to both the challenged § 924(c) count of conviction and the dismissed § 924(c) count. Such a showing is conclusively precluded by the record before the Court. The PSR prepared in advance of the Petitioner's sentencing detailed the Petitioner's use and discharge of a firearm in furtherance of the September 2011 robbery. [CR Doc. 13: PSR at 5-6]. Although the Petitioner objected to the findings that he pointed the gun at the witness who drove up and that he fired the gun at the restaurant's manager, he conceded that "he fired the weapon toward the ceiling" during his perpetration of the robbery. [Id. at 20]. The Petitioner did not object to the other facts described in the PSR, nor did he object to the conclusion that he "admits participation and accepts

responsibility for his involvement in the instant offense." [Id. at 6]. These facts, which are undisputed by the Petitioner, conclusively establish that the Petitioner is not factually innocent of the offense of using and carrying a firearm during and in relation to a Hobbs Act robbery. Accordingly, the Petitioner cannot establish the "actual innocence" necessary to overcome his procedural default.

Because the Petitioner has failed to demonstrate his "actual innocence," his procedural default may be excused only if he can show both cause and actual prejudice. "Cause" as used in this context requires the Petitioner to show that the procedural default "turn[ed] on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). To show actual prejudice, the Petitioner must show "that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

Here, the Petitioner cannot establish actual prejudice.[3] If the Petitioner had raised his constitutional challenge to the § 924 charge at or prior to

---

[3] While the Court's analysis focuses primarily on the fact that the Petitioner cannot demonstrate prejudice under the circumstances of this case, the Court notes that the Petitioner's argument regarding the existence of "cause" is also problematic. Though the

sentencing, the Government would have withdrawn the plea agreement and would not have dismissed the charges as set forth in the Bill of Indictment – including the § 924(c) charge predicated on the Hobbs Act robbery. Thus, the Petitioner still would have been sentenced on a Hobbs Act robbery or Hobbs Act conspiracy charge along with a ten-year consecutive charge under § 924(c). In other words, the Petitioner would have been in the same position, regardless of his assertion of a constitutional challenge to the § 924(c) charge predicated on the Hobbs Act conspiracy.

Moreover, the Petitioner likely would have received the same sentence, regardless of which § 924(c) charge he pled to. As recognized in Dean v. United States, 137 S.Ct. 1170, 1175-76 (2017), district courts have wide discretion in the type of information they may consider when fashioning an appropriate sentence, including sentences imposed for other counts. And courts routinely consider the sentence imposed for a § 924(c) conviction

---

Petitioner argues that raising a vagueness challenge to the residual clause of § 924(c) would have been "futile," the Court notes that this vagueness argument was nothing new at the time of the Petitioner's sentencing. In fact, Johnson – on which the Petitioner greatly relies – was making its way through the Circuit Court by the time that Petitioner was sentenced. See United States v. Johnson, 526 F. App'x 708 (8th Cir. 2013), rev'd, Johnson v. United States, 135 S. Ct. 2551 (2015). In view of the development of the vagueness argument at the time of the Petitioner's sentencing, the Petitioner's argument that raising such an argument would have been futile is questionable. The Court need not decide this issue, however, as the record in this case clearly demonstrates that the Petitioner cannot show actual factual innocence, and that he has failed to show actual prejudice.

when calculating the just sentence for the predicate count. This is usually done by determining an adequate sentence for the aggregate offense conduct and then dividing that term between the mandatory consecutive sentence for the § 924(c) count, thereby leaving the balance as the term of incarceration for the underlying charge.

In fact, § 3553(a) instructs that the sentencing court follow such an analytical approach. The review of the § 3553(a) factors should yield a sentence that is "sufficient but not greater than necessary, to comply with the purposes set forth in" the factors stated therein, including such factors as "the nature and circumstances of the offense" and the need "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1), (2)(B). The existence of a mandatory, consecutive sentence for a related § 924(c) is undoubtedly relevant to crafting an appropriate sentence for the underlying predicate offense. See Dean, 137 S. Ct. at 1176. The Petitioner has presented nothing to indicate otherwise.

Applying those § 3553(a) factors here, the Petitioner's offense conduct was uncontroverted, and it remains uncontroverted to this day. Thus, presumably the Petitioner's aggregate sentence for that conduct would have been the same even if the Petitioner had raised his constitutional challenge to his § 924(c) conviction to the Court.

For all these reasons, the Court concludes that the Petitioner has failed to demonstrate the prejudice necessary to excuse his procedural default.

### B. Waiver

As noted, the Petitioner's Plea Agreement contained an explicit waiver of the Petitioner's right to challenge his sentence or conviction in appellate or post-conviction motions except for claims of ineffective assistance of counsel or prosecutorial misconduct. The Fourth Circuit has recognized that "a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). The Petitioner does not challenge the validity of his waiver, nor does he assert any claims of prosecutorial misconduct or ineffective assistance of counsel.

The Court will not enforce a valid waiver, however, "if to do so would result in a miscarriage of justice." United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016). "A proper showing of 'actual innocence' is sufficient to satisfy the 'miscarriage of justice' requirement." Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009). For the reasons discussed above, the Court concludes that the Petitioner cannot make such a showing here. Because the Petitioner cannot establish his actual innocence of the more serious §

924(c) charge that the Government dismissed in exchange for his plea, the Court concludes that the Petitioner's knowing and voluntary waiver of his right to collaterally attack his conviction and sentence also bars him from raising this claim.

**IV.    CONCLUSION**

For the reasons stated herein, the Court denies and dismisses the motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# **ORDER**

**IT IS, THEREFORE, ORDERED** that the Government's Motion to Dismiss [CV Doc. 9] is **GRANTED**, and the Petitioner's Motion to Vacate Sentence under 28 U.S.C. § 2255 [CV Doc. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 29, 2020

Martin Reidinger
United States District Judge